No. 24-2071

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

VIRGINIA COALITION FOR IMMIGRANT RIGHTS, et al.,
*Plaintiffs – Appellees*,

v.

SUSAN BEALES, in her official capacity as Virginia Commissioner of Elections, et al.,
*Defendants – Appellants.*

On Appeal from the United States District Court
for the Eastern District of Virginia

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

Charles J. Cooper
Joseph O. Masterman
Bradley L. Larson
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Jason S. Miyares
*Attorney General*
Thomas J. Sanford
*Deputy Attorney General*
Erika L. Maley
*Solicitor General*
Graham K. Bryant
*Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

*Counsel for Defendants-Appellants*

INTRODUCTION

Due to time constraints, Virginia limits this reply to the most serious legal errors, mischaracterizations, and omissions in Plaintiffs' opposition briefs. First, Plaintiffs' oppositions show that the preliminary injunction rests on a misconstruction of the statute: the Quiet Period Provision simply does not apply to the removal of noncitizens, whose registrations were void from the outset because the statute does not allow them to become "voters."

Second, both the United States and the Organizational Plaintiffs err in their factual assertions, particularly as to the approximately 1,000 noncitizens removed based on documentation demonstrating noncitizenship that they presented to the Department of Motor Vehicles (DMV), confirmed through the United States' Systematic Alien Verification for Entitlements (SAVE) database. The United States asserts that Virginia has somehow "waived" the argument that it used the SAVE database, but in fact Virginia discussed this process at length in its brief and evidence below. *See* A134-35, 144, 157-58, 159-61, 165, 168 (Brief in Opposition); Coles Decl. ¶¶23-32. Meanwhile, the Organizational Plaintiffs contend that Virginia "sweep[s] almost exclusively eligible citizens off the

1

voter rolls." Doc. 18-1 at 8. This assertion (which the United States does not join) is flatly wrong, and the Organizational Plaintiffs point to no evidence supporting it. Rather, they identify only *one* citizen allegedly removed from Virginia's voter rolls during the Quiet Period, who plans to use Virginia's same-day registration process to vote on Election Day. Evidence of irreparable harm to support the injunction is thus wholly lacking—while the injunction itself will irreparably harm Virginia. See Doc. 11-1 at 23-25, 28-30.

Finally, both the United States and Organizational Plaintiffs fail to justify their litigation decisions to delay filing suit until the eleventh hour, then seek burdensome injunctive relief on the eve of the election. The NVRA did not, as the Organizational Plaintiffs suggest, somehow bar them from suing more than 30 days before the election. 52 U.S.C. § 20510(b). To the contrary, they could have brought suit far earlier. In these circumstances, *Purcell v. Gonzales*, 549 U.S. 1 (2006), bars the highly burdensome mandatory injunction that the district court imposed here, which will create serious confusion and hardship for Virginia election officials and voters.

# ARGUMENT

## I. Statutory Interpretation

The most important error across both of the opposition briefs is their failure to meaningfully engage with Virginia's statutory interpretation arguments. As several federal judges have concluded, the NVRA's removal provisions do not apply at all to removals based on registrations that were void *ab initio*. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1135, 1348-49 (11th Cir. 2014) (Suhrheinrich, J., dissenting); *Bell v. Marinko*, 367 F.3d 588, 591–92 (6th Cir. 2004); *United States v. Florida*, 870 F. Supp. 2d 1346, 1349–50 (N.D. Fla. 2012). Noncitizens are not and cannot be "eligible applicant[s]" who can register to vote, 52 U.S.C. § 20507(a), and therefore, when the NVRA speaks about "registrant[s]" and "voters," it is not referring to noncitizens who have been entered onto the voter rolls in violation of state law, *id.*

Plaintiffs, like the courts that have misconstrued the Quiet Period Provision, invoke the *expressio unius* canon of interpretation, but that canon does not apply here for two reasons. First, because noncitizens are not "registrants" or "voters," they do not fall within the prohibition to

3

begin with. So any exceptions to the prohibition are beside the point. Second, the Plaintiffs' *expressio unius* argument would apply just as strongly to the General Removal Provision—yet the Plaintiffs concede that provision does *not* apply to noncitizens. Just like the Quiet Period Provision adjacent the General Removal Provision consists of a blanket ban and then enumerated exceptions to that ban, with no exception for noncitizens. The Plaintiffs disclaim the application of *expressio unius* to the General Removal Provision, because otherwise the provision would be both absurd and unconstitutional, as Virginia previously demonstrated. *See* Doc. 11-1 at 20. But they cannot come up with a textual or logical reason why one provision applies to noncitizens and the other does not. Thus, the NVRA's statutory text and structure shows that neither provision covers noncitizens.

The Organizational Plaintiffs attach dispositive significance to the phrase "any program," but it is similarly inapposite. 52 U.S.C. § 20507(c)(2)(A). The provision covers only a program "the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." *Id.* As explained in the stay motion, Virginia's noncitizen removal process is not such a program, both because

noncitizens are not "voters" at all within the meaning of the provision, and because Virginia's process is individualized, not "systematic[]." Doc. 11-1, at 12–23. The question is whether Virginia's noncitizen removal process is covered by the statute, not whether it is a program.

## II. The SAVE program and Plaintiffs' evidence of citizen removals

Both the United States and the Organizational Plaintiffs err significantly in their description of the record, particularly as to Virginia's ad hoc process and its use of the SAVE database. The United States's argument that Virginia somehow waived reliance on the SAVE database is erroneous. U.S. Opp. at 21. The *ad hoc* process, and the SAVE database it used, have been part of this case from the beginning.

The United States asserts that "[t]he Commonwealth never argued or asserted that the majority of the removals resulted from a process involving the SAVE database, or that it had confirmatory information about the citizenship status of the individuals removed." U.S. Opp. at 21. Not so. Virginia explained in its briefing below that in the ad hoc review "[c]onfirmation of noncitizen status through a new SAVE search was also required before ELECT sent a person's name to the registrar." A157. Indeed, Virginia's briefing below mentioned "SAVE" 18 times, which makes

5

it difficult to miss. Virginia's evidence also discussed the ad hoc review process, and its reliance on the SAVE database. A134-35, 144, 157-58, 159-61, 165, 168.

The Organizational Plaintiffs acknowledge SAVE, but only to make unfounded assertions that the United States' database is highly inaccurate. They cite nearly decade-old assertions by a party in a different case, that apparently had trouble using the SAVE database correctly. Org. Pl. Opp. at 21. But as the United States itself explains, its SAVE database has a 99 percent accuracy rate. U.S. GOV'T ACCOUNTABILITY OFF., GAO-17-204, IMMIGRATION STATUS VERIFICATION FOR IMMIGRANTS: ACTIONS NEEDED TO IMPROVE EFFECTIVENESS AND OVERSIGHT 16 (2017), https://bit.ly/40hexxb.

Apart from their baseless disparagement of their own Co-Plaintiffs' database, the Organizational Plaintiffs point only to limited anecdotal evidence and rumors, providing no support for their sweeping assertion that the self-identified noncitizens Virginia removed were actually "almost exclusively eligible citizens." Org. Pl. Opp. at 3. Plaintiffs claim that they have "uncovered numerous eligible citizens, including [the Organizational Plaintiffs'] own members, wrongfully purged from the rolls." *Id.*

6

at 1–2. In support, they cite declarations identifying precisely *one* named citizen who Plaintiffs claim has been removed from the rolls, who they do *not* claim is a member of any Organizational Plaintiff, and who "plans to use same day registration to vote in person on Election Day." SA226–27. According to the declaration, this person learned that she is purportedly "no longer registered to vote when" one of the Organizational Plaintiffs "called her to tell her [that] her voter registration had been canceled." SA227. The only two other named citizens identified in the declarations are on the voters rolls; according to the declarations, they have reregistered. *See* SA221–22, 225–26. The Organizational Plaintiffs also point to a handful of anonymous people mentioned only in attorney declarations. *See* SA213–15, 217–19. Thus, Plaintiffs' claim (and the District Court's finding) that citizens have been wrongly removed from the voter rolls is entirely based on one named non-member who still plans to vote. This scanty evidence is far from demonstrating either that Virginia's process was unreliable, or that anyone would be irreparably harmed in the absence of the preliminary injunction.

The stories from assorted election employees are just as unconvincing. Registrars apparently uncovered records of people removed from the

7

rolls attesting that they were citizens in the past. Org. Pl. Opp. at 2. But that is unsurprising, as people must attest to their citizenship to be placed on the voter rolls to begin with. Thus, all such past attestations show is that the individuals made contradictory statements to Virginia agencies concerning their citizenship. And to sort out its records, Virginia sent letters asking for clarification from the individuals who had identified themselves as noncitizens. In short, the fact of past attestation does not show that a person is a citizen, especially in light of the fact that attestation requires no documentation, and a more-recent attestation (or SAVE search) indicated noncitizen status.

## III. Delayed Lawsuits and *Purcell*

A plaintiff cannot fail to seek immediate relief and then demand an injunction on the eve of an election. Yet both the United States and Organizational Plaintiffs here did exactly that. They do not dispute that the statutory provisions being challenged were applied in elections since their enactment in 2006—including during the quiet period. Executive Order 35 did not create the statutory removal process that the Plaintiffs are challenging.

8

The United States pushed the excuse below that it somehow did not find out that Virginia was removing noncitizens from the voter rolls until October. Even if so, that is no excuse for seeking a sweeping change to Virginia's voting procedures just days before a presidential election, in clear violation of the *Purcell* doctrine. Notably, the United States does not even try to excuse its tardiness in its opposition brief here.

The Organizational Plaintiffs' justifications for the last-minute timing of their suit are even weaker. First, their entire legal theory is that "any program" of this type within the Quiet Period Provision is categorically unlawful. Org. Pl. Opp. at 11–12. If that were the case, their claim accrued at the start of the 90-day period, without any need for the "investigation" that they say they needed to make. According to their arguments, the details of the program do not matter.

Second, they blame the NVRA, arguing that they filed on the "first day that was permissible under the NVRA's 30-day preelection period." Org. Pl. Opp. at 9. Organizational Plaintiffs own admissions show that is objectively wrong. If an alleged violation of the NVRA occurs within 120 days of an election, an aggrieved person may file suit 20 days after they provide notice to the state. 52 U.S.C. § 20510(b). The Plaintiffs say that

9

they put Virginia "on notice about the potential NVRA violations in August." Org. Pl. Opp. at 18. If notice was given in August, there was no reason to wait until October to sue. Their excuse is clearly a post-hoc justification for their litigation strategy.

Finally, the Organizational Plaintiffs argue that their delay was justified because they needed more information about the challenged law and were stonewalled. As their own exhibits show, however, that is not so. The Organizational Plaintiffs served Virginia FOIA officers with requests for information on August 20, nearly two weeks after E.O. 35 was issued. *See* Ex. M to Prelim. Inj. Mot., Dist. Ct. ECF No. 26-14. These requests were copious, broad, and, as ELECT noted in response, would incur "a significant cost estimate." Ex. N to Prelim. Inj. Mot., Dist. Ct. ECF No. 26-15 at 8. (Plaintiffs did not include in their exhibits the cost estimate that ELECT provided with this response.) Although these requests would have taken substantial time to answer in full, ELECT officials worked with Organizational Plaintiffs to provide the information that could be provided within a reasonable time. *See id.* at 2–8. The Organizational Plaintiffs filed suit nearly one full month after this exchange.

For all these reasons above, the Plaintiffs would not be entitled to an injunction even in normal times. The fact that there is an election on the horizon only makes their delay worse. The *Purcell* doctrine is all about ensuring that election lawsuits are adjudicated at the proper time, and the Plaintiffs' delay frustrates that goal.

## CONCLUSION

This Court should grant motion for a stay of the preliminary injunction pending appeal.

Dated: October 26, 2024

RESPECTFULLY SUBMITTED,

COMMONWEALTH OF VIRGINIA; VIRGINIA STATE BOARD OF ELECTIONS; **SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **DONALD W. MERRICKS** and **MATTHEW WEINSTEIN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

*/s/ Erika L. Maley*
Erika L. Maley (VSB #97533)
*Solicitor General*
Counsel for Defendants-Appellants

Charles J. Cooper
Joseph O. Masterman
Bradley L. Larson
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants-Appellants*

Jason S. Miyares
  *Attorney General*
Thomas J. Sanford
  *Deputy Attorney General*
Erika L. Maley
  *Solicitor General*
Graham K. Bryant
  *Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

# CERTIFICATE OF COMPLIANCE

This motion complies with the length limitations of Fed. R. App. P. 27(d)(2)(C) because it contains 2,021 words, excluding the portions not subject to that limitation. This response complies with the typeface and the type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

/s/ *Erika L. Maley*
Erika L. Maley
*Solicitor General*
Counsel for Defendants-Appellants

## CERTIFICATE OF SERVICE

I certify that on October 26, 2024, I electronically filed the foregoing motion with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Erika L. Maley*

Erika L. Maley (VSB #97533)
*Solicitor General*
Counsel for Defendants-Appellants
