UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-2071
(1:24-cv-01778-PTG-WBP)
(1:24-cv-01807-PTG-WBP)
_____

VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; LEAGUE OF WOMEN VOTERS OF VIRGINIA EDUCATION FUND; AFRICAN COMMUNITIES TOGETHER; UNITED STATES OF AMERICA

      Plaintiffs - Appellees

v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; DONALD W. MERRICKS, in his official capacity as a member of the State Board of Elections; MATTHEW WEINSTEIN, in his official capacity as a member of the State Board of Elections; JASON MIYARES, in his official capacity as Virginia Attorney General; COMMONWEALTH OF VIRGINIA; VIRGINIA STATE BOARD OF ELECTIONS

      Defendants - Appellants.

_____

O R D E R

_____

Appellants' motion for a stay of the district court's preliminary injunction pending appeal is DENIED in all respects except for paragraph 7 of the district court's order, where it is GRANTED. Appellants' request for an administrative stay is denied as moot.

1

Appellants have not shown they are likely to prevail in their appeal from the district court's preliminary injunction. Despite having made various justiciability and sovereign immunity arguments before the district court, appellants drop all such claims before us.[*] Instead, appellants argue the challenged conduct does not violate the National Voter Registration Act (NVRA). Like the district court, we are unpersuaded.

The NVRA's Quiet Period Provision requires that any state "program" whose purpose "is to systematically remove the names of ineligible voters from the official lists of eligible voters" based on the failure to meet eligibility requirements must halt "not later than 90 days prior to" any election for federal office. 52 U.S.C. § 20507(c)(2)(A). Appellants have not denied that the challenged conduct constitutes a "program" before either the district court or this one. And, like the district court, we conclude the challenged program "most certainly is" systematic. ECF 11-1, at A-463. A process is systematic if it uses a "mass computerized data-matching process" to identify and confirm names for removal without "individualized information or investigation." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014). Here, the challenged program does not require communication with or particularized investigation into any specific individual. Rather, the

---

[*] We have considered and confirmed that appellees have standing to seek the preliminary injunction granted by the district court. See *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (holding that standing analysis must be conducted on a remedy-by-remedy basis). The federal government has standing to seek remedies for violations of federal statutes (like this one) that provide it with a right of action, see 52 U.S.C. § 20510(a), and "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

inclusion of a person's name on a list electronically compared to other agency databases is enough for removal from the voter rolls.

Appellants respond that "[t]he Quiet Period Provision does not cover noncitizens at all," so even the most systematic efforts to remove noncitizens from voter registration lists within 90 days of a federal election are immune from judicial scrutiny. ECF 11-1, at 14. That argument violates basic principles of statutory construction by focusing on a differently worded statutory provision that is not at issue here and proposing a strained reading of the Quiet Period Provision to avoid rendering that other provision absurd or unconstitutional. That is not how courts interpret statutes.

Appellants' proposed interpretation also creates new problems. First, it renders language in the Quiet Period Provision superfluous by collapsing the distinction between "voters" and "eligible voters." 52 U.S.C. § 20507(c)(2)(A); see, *e.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 (1993) ("We will not read the statute to render the modifier superfluous."). Second, it requires reading different words in different provisions of the NVRA—"voters" in subsection (c)(2)(A) and "registrant" in subsection (a)(3)—as having the same meaning. See, *e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (quotation marks removed)). Finally, appellants' proposed interpretation appears to violate another bedrock principle of statutory interpretation—this time, the plain-meaning rule—by reading "registrant" in subsection (a)(3) as meaning something other than "one that registers or is registered" to vote. *Registrant*, Merriam-Webster, https://www.merriam-

webster.com/dictionary/registrant [perma.cc/QF9U-RRTA]. "Better, we think, to stick with the language of" the provision before us, *Allen v. Atlas Box & Crating Co.*, 59 F.4th 145, 151 (4th Cir. 2023), while leaving questions about other provisions for another day.

Appellants' remaining arguments fare no better. Appellants err in asserting that the district court ordered them to "restore approximately 1,600 noncitizens to the voter rolls." ECF 11-1, at 9. What the district court actually found was that "neither the Court nor the parties . . . know" that the people "removed from" the voter rolls under the challenged program "were, in fact, noncitizens," and that at least some "eligible citizens . . . have had their registrations canceled and were unaware that this was even so." ECF 11-1, at A-471, A-472; accord ECF 18-1, at 1–3 (private appellees recounting evidence of citizens eligible to vote being removed from voter rolls); Transcript of Motion Hearing at 13, *Ala. Coal. for Immigrant Just. v. Allen*, No. 2:24-cv-01254 (N.D. Ala. Oct. 16, 2024) (different district court finding that similar program led to more than 2,000 eligible voters mistakenly being declared ineligible to vote and inaccurately referred for criminal investigation). Appellants' motion does not acknowledge these factual findings (much less attempts to show they are clearly erroneous), and any casual suggestion to that effect in appellants' reply brief is too little and comes too late to preserve such an argument for our consideration. See ECF 21, at 7; *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

The district court also did not err in concluding there was no unreasonable delay in bringing suit. Rather, the private appellees "engaged in communications and discussions" to obtain records from the appellants beginning less than a week after the challenged executive order issued and "continuing through September." ECF 11-1, at A-470; see *id.* at

4

A-358 (private appellees representing they first reached out to appellants six days after the challenged executive order). Appellees then filed suit on the first day they could do so without waiting another 20 days before proceeding. See 52 U.S.C. § 20510(b).

Additionally, the district court did not violate the *Purcell* principle. See generally *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). That "important principle of judicial restraint" protects the ability of "[l]awmakers" to "make a host of difficult decisions about how best to structure and conduct [an] election," without interference to their "carefully considered and democratically enacted state election rules" right before an election. *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (mem.) (Kavanaugh, J., concurring in denial of application to vacate stay). But appellees do not challenge a state election law. Instead, they challenge the implementation of an executive order that was itself issued 44 days before the start of early voting and only 90 days before the end of the election. What is more, the statute under which appellees have sued (the NVRA) imposes limits that apply only within the immediate period before an election and expressly contemplates suits filed "within 30 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(3).

Appellants' claims of irreparable injury absent a stay are weak. Under the preliminary injunction, appellants remain able to prevent noncitizens from voting by canceling registrations on an individualized basis or prosecuting any noncitizen who votes—options the district court specifically flagged at the hearing and in its written order. See ECF 11-1, at A-467, A-473, A-492. And the district court did not err in concluding that both the balance of the equities and the public interest favor interim equitable relief that

gives full force and effect to a federal law that functions to prevent last-minute voter registration purges and to ensure that people who are legally entitled to vote are not prevented from doing so by faulty databases or bureaucratic mistakes. See *Arcia*, 772 F.3d at 1346 (noting that, during the 90-day quiet period, "the calculus changes" in favor of avoiding incorrectly removing eligible voters).

We reach a different conclusion solely as to paragraph 7 of the district court's remedial order. Federal Rule of Civil Procedure 65(d)(1) requires that "[e]very order granting an injunction . . . describe in reasonable detail . . . the act or acts restrained or required." And injunctions in the period before an election impose heightened burdens on state officials where the injunction is difficult to "understand" and "implement." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring in denial of application to vacate stay). While we appreciate the district court's careful work under substantial time constraints, we conclude that paragraph 7 of the preliminary injunction is not sufficiently clear as to its scope and risks undue confusion in its implementation. We thus stay the portion of the district court's order requiring the appellants "and their agents" to "educate local officials, poll workers, and the general public" about the impact of the district court's order, including by "tracking of poll worker training in all 95 counties and independent cities in the Commonwealth." ECF 11-1, at A-492.

Entered at the direction of Judge Heytens with the concurrence of Chief Judge Diaz and Judge Thacker.

For the Court

/s/ Nwamaka Anowi, Clerk